# The City of Pittsburg *v.* John M. Anderson, Appellant.

*Public officers—Compensation—County treasurer—Commissions on liquor license—Acts of April 15, 1834, May 13, 1887, and June 9, 1891.*

The proportion of liquor license fees given by the Acts of 1887, P. L. 108, and of 1891, P. L. 248, to cities, is not a gift by the state, but an acknowledgment of the cities' equitable claim, and a positive relinquishment of the commonwealth's legal right thereto. County treasurers receive it for, and pay it over to, not the state, but the cities.

The treasurer of Allegheny county who receives a fixed salary for his services is not entitled under the Act of April 15, 1834, P. L. 537, to retain commissions upon the amount of liquor licenses which he has collected and paid over to the city of Pittsburg.

Argued Oct. 31, 1899. Appeal, No. 7, Oct. T., 1899, by defendant, from order of C. P. No. 1, Allegheny Co., March T., 1898, No. 461, making absolute a rule for judgment for want of a sufficient affidavit of defense. Before GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Rule for judgment for want of a sufficient affidavit of defense.

The material averments of the statement and of the affidavit of defense are set forth in the opinion of the Supreme Court.

The court made the rule absolute.

*Error assigned* was the order of the court.

*D. T. Watson,* with him *George C. Wilson* and *Johns McCleave,* for appellant.—Different systems of issuing licenses for liquor selling were in force in Allegheny county from 1834 down to 1887, and under each and all of them the county treasurer collected the license fees and was compensated by the state for so doing: Act of March 31, 1856, P. L. 200; April 20, 1858, P. L. 365; April 3, 1872, P. L. 843.

The money when paid to the county treasurer was the state's money, and it was money received and collected by the county treasurer for the state, and being thus received and collected for the state it comes directly under the provisions of the act of 1834, which gives to the county treasurer the commission therein stated. That the commission to be retained was under

the provision of the act of 1834, is seen from the language of this act of 1887.

The further proviso to the act of 1887 intended that the treasurer might have his commissions, not only in cases where he actually paid over the money to the state, or the city under the state's directions, but on the entire license fees. The act provided that the treasurer was entitled to a commission even on the amount which he received and kept for the use of the county. This was ex majore cautela, and so as to avoid any question of the right of the treasurer, not only to receive his commissions for the township and city, but also for the county itself.

In the construction of a statute every part of it must be viewed in connection with the whole, so as to make all its parts harmonize, if practicable, and give a sensible and intelligent effect to each. It is not to be presumed that the legislature intended any part of a statute to be without meaning: Com. v. Conyngham, 66 Pa. 99; Holl v. Deshler, 71 Pa. 301; Com. v. McGinnis, 2 Whart. 117.

This line of reasoning is in full harmony with the reasoning of this court and its decision in Philadelphia v. Martin, 125 Pa. 583, where it was held that a county treasurer, in acting for the commonwealth in the collection of its revenues and accounting for the same, performs distinct and separate duties imposed upon him by law, and in such services he does not act in his capacity as a county officer, but as the officer or employee of the commonwealth, and that, therefore, the Act of March 31, 1876, P. L. 13, carrying into effect section 5, article 14 of the constitution, and providing that in any county having over 150,000 inhabitants all legal fees received by county officers shall belong to the county, does not require that the compensation received by the county treasurer as commissions for the collection of state revenues shall be paid into the county treasury.

To repeal a statute by implication there must be such a positive repugnancy between the provisions of the new law and the old that they cannot stand together, or be consistently reconciled: Brown v. County Commissioners, 21 Pa. 37; McCool v. Smith, 1 Black, 459; Homer v. Com., 106 Pa. 221; Sifred v. Com., 104 Pa. 179; Williamsport v. Brown, 84 Pa. 438;

Com. v. Erie Ry. Co., 98 Pa. 127; Barber's Contested Election, 86 Pa. 400.

*J. H. Beal,* with him *Clarence Burleigh,* for appellee.

OPINION BY MR. JUSTICE DEAN, December 30, 1899:

Defendant, at the November election, 1896, was elected treasurer of Allegheny county, to serve for the term of three years from the first Monday of January, 1897. He duly qualified and assumed the duties of the office. The salary of the office fixed by law is $6,000 per annum. The city of Pittsburg, a city of the second class, is within the county. In the year 1897, the court of quarter sessions granted 502 licenses for the sale of liquor within the limits of the city; the license fee in each case was $1,000, of which sum $900 was paid to the treasurer for the use of the city and $100 for the use of the county, making the sum total for the city $451,800. There were also paid to the treasurer fees for transfer of unexpired licenses for the same year, $2,936.51. Of the total amount thus received, the treasurer retained $2,344.62, claiming it as his lawful commission in addition to his salary. The city denied the lawfulness of the claim, and brought this suit to recover the money. The defendant filed affidavit of defense, averring, that lawfully he was entitled to receive five per cent on the first $1,000 of said license fees collected, one per cent on the second $1,000, and one half of one per cent on the remainder, making the precise sum retained by him and claimed by the city, and therefore, that he had a full and just defense to the suit. On motion of the city a rule was taken to show cause why judgment should not be given for want of a sufficient affidavit of defense. On hearing, the court below made the rule absolute, and we have this appeal by the treasurer, assigning for error the ruling of the court, that appellant being a salaried officer was not entitled to commissions on license fees received by him and paid over to the city of Pittsburg.

The argument to sustain the assignment is in the main founded upon the provisions of the act of April 15, 1834, relating to "counties and townships and county and township officers." Under this act it was the duty of the treasurer to collect money due the state for taxes, collateral inheritance, licensed tavern

keepers, and from any source from which " by law he is now or hereinafter may be required to receive money on behalf of the commonwealth," and after deducting his lawful compensation pay over twice a year the balance to the state treasurer. The rate of compensation was fixed by the 42d section of the act, which provided that where the whole sum paid into the state treasury or otherwise for the use of the commonwealth does not exceed $1,000, five per cent should be retained, when not in excess of $2,000, one per cent, and all beyond the $2,000, one half per cent. Here, it is argued, is the express authority to retain the commissions charged, for they are to be, not only on the whole sum actually paid into the state treasury but for money paid otherwise for the use of the commonwealth. Further, that while originally the entire amount of license fees was paid to the state, yet afterwards, in a spirit of generosity, she chose to donate to one of her subordinate territorial divisions a part of the money which under the act was payable to her, and directed that the money need not in a roundabout way go into the state treasury and then back to the city ; nevertheless, this did not remove from it the mark of state money ; it was still the money of the state collected under the act of 1834 from tavern licenses ; and it was, in the words of the act, from a source from which the county treasurer "now is or may be hereinafter required to receive money," thus including future collections under new laws. And, argues appellant: "It was the state under its general police power that authorized the issuing of the licenses to sell liquor. It was the state that fixed the license fee. It was a sum of money which the licensee paid to the state for the privilege of selling the liquor. It was not paid to the county, or to the city, or to the township. Neither one of these municipal subdivisions granted or had the power to grant the licenses. It was the state, and the state alone, which had the sovereign power to grant the licenses and fix the fee, and it was to the state, and to the state alone, that the money was paid. Therefore the money when paid to the county treasurer was the state's money, and it was money received and collected by the county treasurer for the state, and being thus received and collected for the state it comes directly under the provisions of the act of 1834 above recited, and which gives to the county treasurer the commission therein stated."

We do not deny the force of the able argument of appellant's counsel, but we think it fails to give full effect to section 5 of article 14 of the constitution, and section 8 of the act of 1887, and the amendment of 1891. Section 8 of the act of 1887 classifies licenses and directs, among other things, that in cities of the second and third class, two fifths of the fees shall be paid for the use of the city, and one fifth for the use of the commonwealth, and then follows this proviso:

"Provided, that counties, cities, boroughs and townships receiving part of said licenses shall bear their proportionate share of the expenses attending the collection of the same; and provided further, That the treasurers of the several counties shall appropriate for their own use the commissions on the amounts retained for the use of their respective counties as they are now authorized to retain by law out of the moneys they returned to the state."

Then came the act of 1891, expressly amendatory of the act of 1887, which changed the classification of licenses and raised the rate of fees, and directed that in cities the sum of $100 should be paid to the counties, and the balance, $900, should be paid to the city treasurer. Under the act of 1834 the relation of the county treasurer to the commonwealth was that of her agent to collect and pay over to the state treasurer certain taxes and fees; assume that the sovereign donated to the subordinate that which alone she could levy, and which by her authority alone could be collected, she could delegate her authority to the county officer that it might be by him exercised solely for and in behalf of the subordinate municipality. If she chose, she could give or donate fees otherwise payable to her, to the city, there to remain, without directly or indirectly laying her hand upon them, and directing that a county or city officer should receive and pay them over to the municipality. It seems to us, such duty, as concerned the amount payable to the city was plainly imposed upon the county treasurer by the acts of 1887 and 1891. He no longer received a cent of the $900 for, nor paid over a cent to, the state. It was not in any real sense a gift by the state to the city, but an acknowledgment of the city's equitable claim to the money and a positive relinquishment of the commonwealth's legal right thereto; thereafter the officer received for and paid over to the city money belonging

to the city, and to the city alone was he accountable. In the face of these acts the theory that the money was the state's and that the officer acted for the state in collecting and distributing her bounty is not sustainable.

If then the functions the treasurer performed were those of a county officer, imposed by the acts of 1887 and 1891, is he entitled to compensation by fees for their performance? It is a county office, designated and recognized by the constitution of 1874. Section 5, article 14, of that instrument declares that "In counties containing over 150,000 inhabitants all county officers shall be paid by salary." It is admitted that treasurer Anderson's salary, in obedience to the constitution, by proper legislation, is fixed by law, and that it is $6,000 per annum. He cannot, therefore, retain fees for the performance of any municipal duty imposed upon him by law. We held in McCleary v. Allegheny Co., 163 Pa. 587, and kindred cases, that the object of the constitution and the general act of 1876 was to strike down the fee system in all counties containing over 150,000 inhabitants. It is our intention to adhere to the controlling principle in those cases, and wherever possible, give effect to the constitutional mandate. We would fail in judicial duty if we did not do so. City of Phila. v. Martin, 125 Pa. 583, is again cited as sustaining the fee system, in spite of the constitution; we again say, as we have said several times, that case is authority only for the point decided; where the state gives a special compensation for a special duty performed for the state, the compensation belongs to the officer, and not to the county. That is not this case. We never did, and do not now, approve of all the language adopted by Judge ALLISON in vindication of his judgment in City of Phila. v. Martin, supra.

The judgment of the court below is affirmed.